UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————————X

DEREK L. POWERS,

                   Plaintiff,

          v.

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, SALVATORE
MAGADDINO, and ALBERT W. GIRIMONTE

                 Defendants.

————————————————————————————X

<u>MEMORANDUM AND ORDER</u>
04-CV-02246 (NGG)

GARAUFIS, United States District Judge.

     In this civil action, Plaintiff Derek Powers ("Powers" or "Plaintiff") alleges that above-captioned Defendants discriminated against him on the basis of his race and retaliated against him for serving as a witness in a civil rights action against the New York City Police Department ("NYPD") and NYPD officials. Defendants move for summary judgment, arguing that the action is barred by *res judicata*: Defendants assert that the instant claims are barred by a settlement in a prior class action, <u>LOA v. City of New York</u>, 99 Civ. 9568 (S.D.N.Y.). Defendants also argue that Defendant City of New York is entitled to summary judgment on the claims under 42 U.S.C. § 1983 on the ground that Plaintiff is not alleging a link between the alleged wrongdoing and any official policy. For the reasons described below, Defendants' motion for summary judgment is granted in part and denied in part.

## I.    Factual Background

     Before setting forth the relevant facts, I note that when deciding a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party

and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). Even in a fact-intensive case, however, the court will not accept as fact mere allegations lacking evidentiary support. Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001).

Powers, an African-American male, began working for the NYPD as a Patrol Officer in 1982. (Plaintiff's 56.1 Statement ("Pl. Rule 56.1 St.") at ¶ 1.) At some point, Powers was promoted to the position of Commanding Officer of the Brooklyn Special Victims Squad. (Id.) Powers was the only African-American in the NYPD to hold a borough-wide command. (Id.) In this capacity, Powers managed sixty employees under the supervision of Defendants Magaddino and Girimonte. (Compl. at ¶12.) Plaintiff asserts that he performed his responsibilities satisfactorily. (Id. at ¶¶ 13-14, 16.)

On January 9, 1997, Powers testified "against" Albert Girimonte and Defendant City of New York at trial in the matter of White-Ruiz v. City of New York, et al., 93 Civ. 7233. (Affidavit of Derek Powers ("Powers Aff.") at ¶ 5.) In White-Ruiz, the plaintiff-NYPD officer brought a claim under 42 U.S.C. § 1983, alleging that the City of New York and various NYPD officials, including Albert Girimonte, violated Plaintiff's First Amendment rights by harassing her over the course of many years in retaliation for her having disclosed a fellow officer's corruption. See White-Ruiz v. City of New York, 983 F. Supp. 365, 367 (S.D.N.Y. 1997). After Powers testified, the NYPD assigned Girimonte to be Powers's "immediate supervisor." (Id.) "Shortly" after Powers was assigned to work under Girimonte's supervision, Girimonte subjected Powers to "disparate treatment." (Id.) This disparate treatment included—and may

2

have been limited to—transferring Powers from his position of Commanding Officer of the

Brooklyn Special Victims to the position of Night Watch Supervisor in August 2002. (Id.; Pl.

Rule 56.1 St. at ¶ 1). Powers alleges that this transfer constituted a demotion. (Compl. at ¶ 17.)

As Night Watch Supervisor, Powers supervised only seven to eight employees. (See Compl. at ¶

16.) Powers alleges that none of his white colleagues had been similarly reassigned. (Compl. at

¶¶ 13-14, 16.)

In the Complaint filed in this case, Powers alleges that

> defendants subjected plaintiff to discriminatory treatment,
> unlawful disparate treatment, retaliation and a hostile work
> environment in the terms and conditions of his employment
> predicated upon plaintiff's race and color in the terms and
> conditions of his employment. Defendants[] discriminatorily
> relieved plaintiff of his responsibilities as Commander of Brooklyn
> Special Victims. Defendants retaliated against plaintiff for
> engaging in prior protected activity.

(Compl. at ¶ 15.) However, in the Proposed Joint Pretrial Order, Powers states that he will

pursue a far more narrow claim at trial:

> Plaintiff asserts that the defendants discriminated against him on
> the basis of race and in retaliation when defendants removed him
> from his assignment as Borough [C]ommander of [S]pecial
> Victims in Brooklyn and reassigned him to Night Watch. This
> assignment resulted in drastically diminished responsibilities and
> advancement opportunities. Plaintiff contends that such
> reassignment was predicated on his participati[o]n [in] a prior
> discrimination lawsuit involving another employee and a named
> defendant in this case. . . . He does not allege discriminatory
> discipline or that the discrimination and retaliation he suffered
> were pursuant to a City policy or practice.

(Proposed Joint Pretrial Order at pages 1-2.)

Defendants argue that Plaintiff's claims are precluded by a prior class action brought by

Latino and African-American members of the NYPD against the City of New York, the NYPD,

3

and individual members of the NYPD, Latino Officers Ass'n City of New York, Inc. v. City of New York, 209 F.R.D. 79, 80 (S.D.N.Y. 2002) ("LOA" or "LOA Class Action"). The LOA plaintiffs alleged retaliation, discrimination, disparate treatment and a hostile work environment in violation of Title VII, the First and Fourteenth Amendments, New York State Human Rights Law, and New York common law. While the discrimination claims focused on the NYPD's administration of its disciplinary rules, the retaliation claim related to actions taken against Latino and African-American employees "for complaining about what they perceived to be a hostile work environment and race-based disparities in discipline." LOA Class Action, 209 F.R.D. at 85-86. In retaliation for voicing complaints about the NYPD's practices and policies, the plaintiffs claimed they were, *inter alia*, "transfer[red] to undesirable positions within the NYPD." Id.

The plaintiff class was defined as follows:

> [A]ll Latino and African-American individuals who have been, are, or will be employed by the NYPD as members of the force, who have been or will be subjected to discrimination on the basis of race, color or national origin in the form of a hostile work environment, disparate disciplinary treatment, and retaliation for the exercise of their rights . . . for purposes of individual claims for compensation or damages, the class shall be limited to members of the force whose claims arose between September 9, 1996 through December 31, 2003[.]

LOA Class Action, No. 99 Civ. 9568 (LAK)(KNF), 2004 WL 2066605, at *1 (S.D.N.Y. Sept. 15, 2004). The LOA Class Action was resolved on the basis of a settlement agreement, and a final judgment on the merits was entered on September 15, 2004. See LOA Class Action, 2004 WL 2066605, at *1-3. Plaintiff asserts he was never given notice of the LOA settlement. (Powers Aff. at ¶ 4.)

4

## II.       Legal Analysis

### A.       Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c)), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz, 258 F.3d at 69 (citations and quotation marks omitted).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party has met this burden, then the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted); see also Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmovant can create a genuine issue of material fact only by citing competent, admissible evidence. Glasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)).

**B.**     *Res Judicata*

Defendants' motion must be denied because Defendants have failed to show that

Plaintiff's claims are barred by *res judicata* as a matter of law. Under *res judicata*, "a final

judgment on the merits of an action precludes the parties or their privies from relitigating issues

that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980);

see also St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000); Burgos v. Hopkins, 14 F.3d 787,

789 (2d Cir. 1994). To prove that a claim is barred by *res judicata*, the moving party must

demonstrate that:

> (1) the previous action involved an adjudication on the merits;
>
> (2) the previous action involved the same parties or those in privity with them; and
>
> (3) the claims asserted in the subsequent action were, or could have been, raised in the previous action.

Monahan, 214 F.3d at 284-85 (citing Allen, 449 U.S. at 94); see also MacPherson v. State Street

Bank & Trust Co., 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006). The court will consider each of

the prongs in turn.

### 1.     Adjudication on the Merits

To satisfy the first prong, the prior litigation must have resulted in a final judgment on

the merits. See Allen, 449 U.S. at 94. The Second Circuit has held that "a dismissal, with

prejudice, arising out of a settlement agreement operates as a final judgment for *res judicata*

purposes." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002). In the LOA

Class Action, the District Court approved the parties' settlement agreement and dismissed the

individual and class claims (excepting the claims of those who opted-out) with prejudice. LOA Class Action, 2004 WL 2066605, at *3. Consequently, the order issued by the District Court qualifies as a final judgment on the merits. The jurisdiction of the LOA court is not disputed. Defendants have, therefore, satisfied the first prong of the *res judicata* defense.

## 2.    Same Parties

The second prong of the defense is also satisfied because the parties to the present suit are clearly the same as those in the LOA Class Action. Although Plaintiff was not individually named in the prior action, Defendants argue that he is a member of the class certified by LOA and defined as follows:

> [A]ll Latino and African-American individuals who have been, are, or will be employed by the NYPD as members of the force, who have been or will be subjected to discrimination on the basis of race, color or national origin in the form of a hostile work environment, disparate disciplinary treatment, and retaliation for the exercise of their rights . . . for purposes of individual claims for compensation or damages, the class shall be limited to members of the force whose claims arose between September 9, 1996 through December 31, 2003 . . . .

LOA Class Action, 2004 WL 2066605, at *1. Plaintiff contests his membership in the LOA class, arguing that he did not receive notice of the Class Action or a copy of the settlement order.

This court finds that Plaintiff is a member of the LOA class despite his not having received actual notice. Class action notice procedures must comply with Fed. R. Civ. P. 23 and due process requirements. An individual is a member of a class certified under Rule 23(b)(2) if proper notice procedures were followed and the individual did not opt out. See Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 614-15 (1997); Fed. R. Civ. P. 23(c)(2)(B) ("[C]ourt must direct to class members the best notice practicable under the circumstances, including individual notice

7

to all members who can be reasonably identified through reasonable effort."). While proper notice procedures include individual notice to those class members whose names and addresses may be obtained through reasonable effort, actual notice is unnecessary "so long as class counsel acted reasonably in selecting means likely to inform persons affected." Denney v. Jenkins & Gilcrist, No. 03 Civ. 5460, 2005 WL 388562, at *20 (S.D.N.Y. Feb. 18, 2005).

Similarly, due process requires only that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950); see also Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988). At a minimum, an absent plaintiff must be provided with an opportunity to opt out of the class, and the named plaintiff must adequately represent the interests of the absent class member. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).

The LOA court explicitly found that the LOA defendants provided adequate notice containing the means by which individuals could opt out of the class. The court explained that "notices were mailed to approximately 17,300 potential claimants and published in 5 major newspapers and that 2,191 claims were filed by 1,199 claimants with only 20 opt-outs and 5 objections . . . ." LOA Class Action, 2004 WL 2066605, at *2. Since (1) the LOA court found that the notice procedures were adequate, (2) Plaintiff did not opt out of the class, and (3) Plaintiff has not provided any basis for this court to question the LOA court's finding that the notice procedures were adequate, Plaintiff must be considered a party to the prior action.

Furthermore, neither party disputes that Defendants in this case are the same as those in the LOA Class Action. In both cases, the City of New York, the NYPD, and supervisors within

8

the NYPD were defendants.[1]  See, e.g., Gonzalez v. City of New York, 396 F. Supp. 2d 411, 415

(S.D.N.Y. 2005).  Therefore, the second prong of the *res judicata* test is satisfied.

### 3.    Instant Claims Should Not Have Been Asserted in LOA

Defendants fail to demonstrate that the final prong of the *res judicata* test has been

satisfied.  As a preliminary matter, Defendants' papers in support of the instant motion fail to

provide sufficient information to grant their motion.  Defendants' only description of the claims

at issue in LOA is a reference to the LOA Judgment and Order Approving the Class Action

Settlement, Certifying the Amend Class and Approving Attorneys Fees.  See LOA, 2004 WL

2066605.  This Judgment and Order is less than three pages long.  The only insight into the

claims at issue in LOA that the Judgment and Order provides is a description of the class:

> [A]ll Latino and African-American individuals who have been, are
> or will be employed by the NYPD as members of the force, who
> have been or will be subjected to discrimination on the basis of
> race, color or national origin in the form of a hostile work
> environment, disparate disciplinary treatment, and retaliation for
> the exercise of their rights ("Class Members"); for purposes of
> individual claims for compensation or damages, the class shall be
> limited to members of the force whose claims arose between
> September 9, 1996 through December 31, 2003, and who meet the
> eligibility requirements as defined in the claims procedure set forth
> in the settlement agreement ("Sub-Class Members")[.]

LOA, 2004 WL 2066605, at *1 (internal quotations omitted).  This description does not provide

sufficient information about the claims in LOA to determine whether the instant claims could

and/or should have been brought in LOA.  On that basis alone, the court denies the instant

motion.  After independent research, the court has identified other opinions that describe the

---

[1] Although Magaddino and Girimonte were not individually named defendants, they are
members of the supervisory class of NYPD employees whose conduct was at issue in LOA.

claims at issue in LOA. Even if I were to consider the information contained in these other LOA opinions, I would deny Defendants' motion.

The Second Circuit has adopted a transactional approach to determining whether a claim may be dismissed on the ground that it "could have been" raised in a previous action. See MacPherson, 452 F. Supp. 2d at 141. Whether a claim could have been raised in a prior action "depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Monahan, 214 F.3d at 285 (quoting NLRB v. United Tech., 706 F.2d 1254, 1260 (2d Cir. 1983)). In order to determine whether two claims arise from the same transaction, the court "must look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997) (quoting Restatement (Second) of Judgments § 24(2) (1982)). The term "'transaction' must be given a flexible, common-sense construction that recognizes the reality of the situation." Interoceanica Corp., 107 F.3d at 91. Moreover, the particular legal theory advanced is not determinative; rather, the critical factor is whether the factual predicate upon which the claims are based is "substantially identical" to that at issue in the prior action. Berlitz Sch. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980).

In the instant case, Powers's retaliation claim does not constitute the same cause of action for *res judicata* purposes as the claim brought in the LOA Class Action. Although the same sort of employment action was at issue in LOA, the factual bases of the claims are unrelated in origin

and motivation. See Restatement (Second) of Judgments § 24(2). The LOA plaintiffs alleged retaliation against Latino and African-American members of the NYPD "for complaining about what they perceived to be a hostile work environment and race-based disparities in discipline." LOA, 209 F.R.D. at 85-86. In contrast, Powers alleges retaliation for testifying against his supervisor in an unrelated First Amendment case, White-Ruiz v. City of New York. (Powers Aff. at ¶ 5; White-Ruiz, 983 F. Supp. at 367.)

After reviewing published opinions in the White-Ruiz case, it is clear that the allegations in White-Ruiz concerned the City's violation of the First Amendment as opposed to any allegations of race discrimination.

Both the instant Plaintiff and the LOA class engaged in protected activities, but the factual bases of those activities are distinct. See Thomas v. Metro. Dist. Comm'n, No. 3:04CV980 (DJS), 2005 WL 1366453, at *2 (D. Conn. June 7, 2005) (employment discrimination claim not barred under doctrine of *res judicata* by prior employment discrimination claim even though both involved allegation of retaliation because cases involved different factual predicates). This is precisely why the instant case is distinguishable from Gonzalez. See Gonzalez, 396 F. Supp. 2d at 419 (retaliation claim alleging "a pattern and practice of discrimination against Hispanic detectives, and for retaliating against Plaintiffs' opposition to Defendants' alleged discriminatory practices" was barred by *res judicata* on the basis of LOA). Plaintiff's participation in a First Amendment proceeding cannot be equated with the activity engaged in by the LOA plaintiffs simply because he is an African-American employee who otherwise fits the LOA class description.

*Res judicata* requires substantial similarity between the two events before the doctrine can be invoked to preclude a meritorious claim. Defendants fail to satisfy that standard. It is patently unreasonable to suggest that LOA precludes *any* African-American employee from bringing *any* retaliation-based claim that arose between 1996 and 2003 regardless of how dissimilar the factual predicate would be from that in LOA.

The fact that LOA and the present case "involve[] essentially the same course of wrongful conduct is not decisive; nor is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues." Interoceanica, 107 F.3d at 91. This is because "a single course of conduct may give rise to more than a single cause of action for res judicata purposes." Marvel Characters, 310 F.3d at 287. Moreover, the "could have been" language of the third prong is "something of a misnomer" and somewhat misleading in the instant case. Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001). That Powers "could have" asserted his claims in LOA under the applicable procedural rules is immaterial; rather the proper inquiry is whether his claim was "sufficiently related to the claims that were asserted in [LOA] that it *should have been* asserted in that proceeding." Id. (emphasis added). Since this court has determined that the claims are based on different factual predicates, Plaintiff's retaliation claim is not barred by the doctrine of *res judicata*.

Whether Plaintiff's discrimination claim is barred by *res judicata* is a closer question. This is in large part because the Defendants have provided a bare bones and conclusory description of Plaintiff's discrimination claim. Given the current state of the record, the discrimination claim does not appear to be barred by *res judicata*. Plaintiff appears to assert a claim that constitutes a discrete cause of action arising from events not at issue in LOA. "The

crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest." Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876 (1984).

To establish a claim of racial discrimination under Title VII, a claimant must demonstrate that "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (citing Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002)). An adverse employment action can include "significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal citations omitted). After a plaintiff has established a prima facie case, the burden shifts to the defendant, who is required to offer a legitimate, non-discriminatory rationale for his actions. Employment discrimination claims brought pursuant to Sections 1981 and 1983 are evaluated under this Title VII framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (noting that the same burden-shifting framework "is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. § 1983"); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) (applying Title VII standards to a Section 1981 race-based employment discrimination action).

Plaintiff's discrimination claim(s) appears to be not simply a new legal theory designed to avoid the effects of *res judicata*, but consists of "an entirely independent and different cause of action based on separate transactions and a different set of facts." Gonzalez, 396 F. Supp. 2d at 420. Plaintiff's claim focuses on the alleged discriminatory conduct of two supervisors,

Magaddino and Girimonte. The LOA Class Action addressed allegations of a discriminatory policy or practice and contemplated only the claims of African-American employees "who have been or will be subjected to discrimination on the basis of race . . . *in the form of a hostile work environment, disparate disciplinary treatment, and retaliation for the exercise of their rights . . . ."* LOA Class Action, 2004 WL 2066605, at *1 (emphasis added). Specifically, the LOA plaintiffs alleged: (1) the NYPD created a work environment that is hostile to African-American and Latino police officers; (2) the NYPD disciplinary system disparately treats African-American and Latino officers; and (3) the NYPD retaliated against African-American and Latino officers for complaining about the hostile work environment and race-based disciplinary practices. LOA, 209 F.R.D. at 82-86.

With respect to Plaintiff's discriminatory demotion claim, the LOA class did not bring a cause of action alleging that the NYPD demoted African-American officers on account of their race; such a claim has been brought in this case and it appears to involve an entirely different factual predicate than was at issue in LOA. See Gonzalez, 396 F. Supp. 2d at 419-20 (failure to promote claim not barred by *res judicata* even though plaintiff had been a member of LOA class).

However, with respect to other claims Plaintiff raised in the Complaint, it is less clear whether they are barred by *res judicata*. Most notably, the Complaint alleges a hostile work environment claim. (Compl. at ¶ 15.) In the Proposed Joint Pretrial Order, the Plaintiff does not mention the hostile work environment claim and, as a result, appears to have abandoned it. Defendants have not cited to any correspondence, deposition testimony or other information in the record that addresses whether Plaintiff is pursuing the hostile work environment claim.

14

In any event, with respect to the discrimination claim(s) (including the discriminatory treatment, unlawful disparate treatment, and hostile work environment claims), given the state of the record, Defendants have failed to show that the claim is barred by *res judicata* as a matter of law and, as a result, their summary judgment motion must be denied as to this claim.

### D.    Municipal Liability Under Section 1983

Defendants argue that Plaintiff's Section 1983 claims against the City and the NYPD must be dismissed because Plaintiff does not allege a discriminatory policy or practice of the City.[2]  Plaintiff does not oppose this portion of Defendants' motion.  In fact, in the Proposed Joint Pretrial Order, Plaintiff states that "[h]e does not allege discriminatory discipline or that the discrimination and retaliation he suffered were pursuant to a City policy or practice."  (Proposed Joint Pretrial Order at 2.)  As a result, the motion is granted as unopposed.

Even if Plaintiff opposed the motion, it would still be granted.  Neither a municipality nor its agencies may be held liable under Section 1983 absent an allegation of an unlawful custom or policy, or a claim that the wrongdoing alleged was undertaken by a municipal policy-maker.  See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for

---

[2] Although Defendants motion papers explicitly seek dismissal of only those claims against the City of New York, Defendants' argument that Plaintiff's claims against the City of New York should be dismissed because Plaintiff is not pursuing a policy or practice claim applies equally to Plaintiff's claims against the NYPD.  As a result, the Court will treat the instant motion as one for summary judgment with respect to claims against the City of New York and the NYPD.

the isolated unconstitutional acts of its employees."); see also Pembauer v. City of Cincinnati, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (emphasis in original).

"Plaintiff makes specific claims of discrimination and retaliation regarding the actions of two New York City Police Department employees, not claims attacking its policy and procedure." (Pl. Ltr. to the Court, dated Apr. 26, 2006, at 2. See also Powers Aff. at ¶ 5 ("the LOA matter is distinguishable from my case in that [ ] my case matter relates to claims of individual and personal discriminatory and retaliatory acts of my supervisor, Albert Girimonte in reassigning me from a Borough wide command with the Special Victims Unit to Night Watch Supervisor after I testified against him at a discrimination trial[.]")) Consequently, Plaintiff's claims pursuant to Section 1983 must be dismissed with respect to the City and the NYPD.

## III. Conclusion

For the reasons described above, Defendants' motion for summary judgment on the claims against the City of New York and the NYPD under Section 1983 is GRANTED. The remainder of Defendants' motion is DENIED.


SO ORDERED.

Dated: March 30, 2007            /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.             NICHOLAS G. GARAUFIS
                                     United States District Judge